**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID STETZ, | ) | CASE NO. 1:13-CV-00116 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, David Stetz ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying

his application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This Court has jurisdiction pursuant to

42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. §

636(c)(2).  For the reasons set forth below, the Commissioner's final decision is

AFFIRMED.

## I.  PROCEDURAL HISTORY

On July 8, 2009, Plaintiff filed his application for SSI and alleged a disability

onset date of August 1, 1996.  (Transcript ("Tr.") 154-160.)  The application was denied

initially and upon reconsideration, and Plaintiff requested a hearing before an

---

[1]       On February 14, 2013, Carolyn W. Colvin became Acting Commissioner
of Social Security.  She is automatically substituted as the defendant in
this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

administrative law judge ("ALJ").  (Tr. 88-89, 91-93, 95-97.)  An initial hearing took place

on March 29, 2011, but was continued in order for Plaintiff to obtain representation.  (Tr.

72-85.)  At the rescheduled hearing on August 2, 2011, Plaintiff was represented by

counsel and testified.  (Tr. 35-52.)  A vocational expert ("VE") also participated and

testified.  (Tr. 58-67.)  On September 1, 2011, the ALJ found Plaintiff not disabled.  (Tr.

15.)  On November 29, 2012, the Appeals Council declined to review the ALJ's

decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On January 17, 2013, Plaintiff filed his complaint to challenge the

Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in

this case.  (Doc. Nos. 15 and 16.)

Plaintiff asserts the following assignments of error: (1) substantial evidence does

not support the ALJ's decision, because the ALJ erred in his evaluation of opinion

evidence in the record; and (2) remand is necessary to consider new and material

evidence obtained after Plaintiff's administrative hearing.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born on December 21, 1990, and was 18 years old when he filed his

SSI application.  (Tr. 154.)  Plaintiff met the requirements for high school graduation in

June 2009 and continued in the Brunswick City Schools through June 2011, receiving

work study services at Goodwill Industries and attending classes at the Medina County

Career Center.  (Tr. 179-180, 216, 324.)  During the 2009 high school year, Plaintiff's

grades ranged from B- to A+.  (Tr. 245.)  Plaintiff does not have any past relevant work.

2

(Tr. 28.)

**B.     Medical Evidence[2]**

    **1.     Physician Reports**

In September 1999, a physician diagnosed Plaintiff with attention deficit hyperactivity disorder (ADHD) and prescribed Adderrall.  (Tr. 520.)  In 2007, Plaintiff suffered a panic attack.  (Tr. 382, 410.)  On October 30, 2007, Dr. Bryan T. Hinch diagnosed him with generalized anxiety disorder and prescribed Xanax, which appeared to ease his anxiety symptoms.  (Tr. 406, 408, 410-411.)  Dr. Hinch also prescribed Adderall and Concerta for Plaintiff's ADHD symptoms.  (Tr. 403.)

From November 2007 through May 2009, Plaintiff received counseling for depression and anxiety from a psychologist, Michael J. Morris, Ph.D.  (Tr. 177.)  In August 2009, Dr. Morris reported that he had been treating Plaintiff since November 2007 for panic disorder with agoraphobia and dysthymic disorder.  (Tr. 425-427.)  According to Dr. Morris, Plaintiff reported difficulty concentrating and feelings of frustration and anxiety when dealing with his peers and his father.  (Tr. 426.)  Dr. Morris noted that Plaintiff had a history of depression and panic attacks, had above average intelligence, and was very connected to his mother.  (*Id.*)

On occasion from 2007 through 2009, Plaintiff treated with George Pallotta, D.O.

---

[2]     In addition to Plaintiff's mental impairments, he alleged the following severe physical impairments: (1) bilateral metatarsus adductus with pes planus bilaterally, and (2) obesity.  (Tr. 20.)  Plaintiff does not challenge the ALJ's decision as it relates to Plaintiff's physical impairments.  (Plaintiff's Brief ("Pl. Br.") at 6.)  Accordingly, this Memorandum Order and Opinion discusses only the medical evidence relevant to Plaintiff's mental impairments.

(Tr. 379.)  On November 14, 2007, Dr. Pallotta reported that Plaintiff was awake, alert, cooperative, had good eye contact, and expressed linear, logical, and goal directed thoughts.  (Tr. 383.)  Dr. Pallotta assessed ADHD and panic attacks.  (*Id.*)  On November 28, 2008, Dr. Pallotta reported that Plaintiff's ADHD and anxiety was improved and stabilized.  (Tr. 384.)

On May 6, 2010, Aaron Muttillo, Psy.S., a licensed school psychologist with Strongsville Psychological Services, first performed a diagnostic evaluation of Plaintiff with specific concerns regarding possible impairments in socialization, communication, and development.  (Tr. 479-486.)  After evaluating Plaintiff on several occasions from May 6 to June 29, 2010, Mr. Muttillo diagnosed Plaintiff with Asperger's syndrome, Anxiety Disorder, and Mathematics Disorder.  (Tr. 485.)  Testing revealed that Plaintiff's cognitive abilities fell within the average range, with poor performance in arithmetic consistent with his identified learning disability in math.  (Tr. 484.)  Plaintiff's strengths were in areas of verbal ability, which Mr. Muttillo noted is consistent with many individuals with Asperger's syndrome.  (*Id.*)  Mr. Muttillo found that Plaintiff had a full scale IQ of 93.  (*Id.*)   He further noted that it is common for individuals with Asperger's to receive a diagnosis of ADHD prior to Asperger's syndrome due to overactivity and inattention as children.  (*Id.*)

Mr. Muttillo summarized that Plaintiff presents with significant deficits in socialization and communication, causing him to be unable to establish friendships with same-aged peers.  (Tr. 485.)  According to Mr. Muttillo, Plaintiff's unique set of focused interests often interferes with his ability to relate to others in a typical manner.  (*Id.*)  Furthermore, Mr. Muttillo noted that while Plaintiff has some awareness of his social

4

awkwardness and communication deficits, he lacks the skills to compensate for his

weaknesses.  (*Id.*)  Mr. Muttillo also reported that Plaintiff's excessive anxiety and worry

about multiple topics has a negative effect on his day-to-day functioning and has

interrupted his sleep pattern.  (*Id.*)  Mr. Muttillo recommended that Plaintiff seek

educational and vocational services for individuals with developmental disabilities, that

he consider mentoring so that he may develop social skills in a variety of settings and

situations, and that he begin participating in community activities related to his interests.

(Tr. 484, 486.)

On April 8, 2011, Mr. Muttillo completed a medical source statement regarding

Plaintiff.  (Tr. 489-491.)  Mr. Muttillo reported that Plaintiff has mild[3] limitations in his

ability to make judgments on simple work-related decisions and in his ability to

understand, remember, and carry out complex instructions.  (Tr. 489.)  He has no

limitations in his ability to understand, remember, and carry out simple instructions.

(*Id.*)  Furthermore, Mr. Muttillo stated that Plaintiff would be moderately[4] limited in his

ability to make judgments on complex work-related decisions and his ability to interact

appropriately with supervisors and co-workers.  (Tr. 489.)  Mr. Muttillo opined that

Plaintiff would be markedly[5] limited in his ability to interact appropriately with the public

and respond appropriately to usual work situations and to changes in a routine work

---

3  "Mild" is defined as a slight limitation in the area, but the individual can
generally function well.  (Tr. 280.)

4  "Moderate" is defined as more than a slight limitation in the area, but the
individual is still able to function satisfactory.  (*Id.*)

5  "Marked" is defined as a serious limitation in the area with a substantial
loss in the ability to effectively function.  (*Id.*)

setting.  (*Id.*)   Additionally, Mr. Muttillo stated that Plaintiff's high anxiety level makes it difficult for him to complete tasks without considerable support and multiple opportunities to practice.  (*Id.*)

In July 2011, Mr. Muttillo completed another source statement regarding Plaintiff. (Tr. 521-522.)  He described as "very good" Plaintiff's ability to maintain regular attendance and be punctual and understand, remember, and carry out simple job instructions.  (*Id.*)  He described as "good" Plaintiff's ability to follow work rules, maintain attention and concentration for extended periods of two-hour segments, interact with supervisors, understand, remember, and carry out detailed job instructions, and maintain his appearance.  (*Id.*)   Mr. Muttillo described as "fair" Plaintiff's ability to use judgment, deal with the public, work in coordination with or in proximity to others without being unduly distracted or distracting, understand, remember, and carry out complex job instructions, and socialize and behave in an emotionally stable manner.  (*Id.*)  He described as "poor" Plaintiff's ability to respond appropriately to changes in routine setting, relate to co-workers, function independently without special supervision, deal with work stresses, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, relate predictably in social situations, manage funds/schedules, and leave home on his own.  (*Id.*)

### 2.    Agency Reports

On September 8, 2009, state agency psychologist, Dr. Steven J. Meyer, Ph.D., reviewed the evidence and rendered an opinion on Plaintiff's mental capabilities.  (Tr.

6

442-444.)  Dr. Meyer opined that Plaintiff is moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others.  (Tr. 442-443.)  According to Dr. Meyer, Plaintiff is capable of simple and moderately complex routine work, at a reasonable pace, in a setting with regular expectations and occasional to intermittent interactions with others; however, some assistance is needed at times of change in routine.  (Tr. 444.)

### 3.    School Reports

As a student at Brunswick High School, Plaintiff participated in an individualized education program ("IEP").  Plaintiff's IEP reports discussed his present levels of performance as well as his future plans.  An IEP report from May 1, 2008, noted, "[t]eacher observations have indicated that [Plaintiff's] work habits have improved throughout the school year."  (Tr. 221.)  The report further stated that Plaintiff had "no functional or behavioral issues or concerns" and that a functional vocational evaluation was "not needed."  (Tr. 221, 224.)  An IEP report from May 7, 2009, noted that Plaintiff's "behavior and functional skills are consistent with what is expected of a 12th grade student.  His attention to task appropriate [sic] for his current 12th grade placement.  He does not have any behavioral issues that prevent him from mastering grade level

concepts."  (Tr. 229.)

Plaintiff's school records also include letters of recommendation from some of Plaintiff's teachers.  In the spring of 2009, Plaintiff's art teacher, Mrs. Sarah Costic, wrote that Plaintiff is "inquisitive and insightful," "courteous and respectful to others," and "definitely delivers what he sets out to complete."  (Tr. 217.)  Plaintiff's social studies teacher, Mrs. Michelle Flanigan, wrote that Plaintiff had an excellent attendance record and "is a conscientious student who takes pride in his work."  (Tr. 218.)  She noted that Plaintiff "can be counted on to be present daily and put forth a strong effort into whatever he is asked to accomplish.  He is a responsible, pleasant student and a helpful student aide."  (*Id.*)

Plaintiff's report cards showed that he made improvements as he progressed through high school.  For example, although Plaintiff demonstrated difficulty with math, his twelfth grade math teacher, Mr. David Tolischak, noted on Plaintiff's March 2009 report card that  "[Plaintiff] is a pleasure to have in class.  He did an excellent job this quarter."  (Tr. 220.)  Plaintiff's language arts teacher, Ms. Dawn Ruffner, reported that Plaintiff "[i]s eager to learn and has a good attitude."  (*Id.*)

### 4. Vocational Reports

Plaintiff was enrolled in a work experience program at Goodwill Industries from August 2009 through June 2011.  (Tr. 264-265, 370-375.)  Ms. Echo Burgett, Plaintiff's case manager and trainer at the Brunswick Goodwill retail store, completed monthly reports concerning Plaintiff's progress in the work-training program.  (Tr. 264-25, 370-375.)  At the completion of approximately one month of the program, Ms. Burgett reported that Plaintiff appeared to be hesitant to start any task without first verifying the

8

details and often asked for clarification about what something was or where it went even though he would state the answer before asking.  (Tr. 264.)  In all other areas of progress, such as "cooperation" and "ability to follow instructions," Ms. Burgett reported that Plaintiff was above average or average.  (*Id.*)

In November 2010, Ms. Burgett reported that Plaintiff had made some improvements in the area of staying on task and taking initiative.  (Tr. 300.)  Her recommendation was that he focus on working independently and building self confidence.  (*Id.*)  Plaintiff consistently showed a need for improvement in the area of work speed and rated as having either "competitive work skills" or "good work skills" in the majority of the other areas evaluated.  (Tr. 285-308.)

On April 29, 2011, Ms. Burgett completed a Medical Source Statement concerning Plaintiff's ability to complete mental work-related activities.  (Tr. 280-282.)  She opined that Plaintiff had mild limitations in his ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, and interact appropriately with the public, supervisors, and co-workers.  (Tr. 280-281.)  She reported that Plaintiff had moderate limitations in his ability to make judgments on complex work-related decisions and respond appropriately to usual work situations and to changes in a routine work setting.  (*Id.*)  Ms. Burgett further reported that Plaintiff appeared to doubt himself, demonstrated trouble remembering complex instructions by having to ask for repeated instructions two or more times, hesitated with initiating interaction with unfamiliar people, withdrew somewhat during unusual situations such as being asked to rush and help with something, was moderately affected when required to answer questions about what he had been working on or why he performed

9

a certain way, was indecisive with his answers, and appeared to want others to do his talking for him.  (Tr. 280-281.)

At the conclusion of Plaintiff's time at Goodwill, Ms. Burgett submitted a final report summarizing Plaintiff's involvement in the work experience program.[6]  (Tr. 367-375.)  In this report, Ms. Burgett noted that Plaintiff had demonstrated appropriate behaviors for the workplace throughout the program.  (Tr. 372.)  He greeted his peers and co-workers, appeared informed about current events, and conversed with customers who initiated conversation.  (*Id.*)  At times, he was observed off task talking with co-workers.  (*Id.*)  During his two years of part-time work at Goodwill, Plaintiff learned several job tasks, including hanging pre-sorted textiles, sorting donated textiles by quality, rotating inventory by pulling textiles by color tag, colorizing, putting out new inventory in textiles and wares, and performing customer service with donations and bagging for cashiers.  (*Id.*)  By the end of the program, Plaintiff could put out inventory and pull and sort near-competitively for quantity and competitively for quality.  (*Id.*)  Plaintiff's supervisors observed that Plaintiff took additional time to ensure that he completed his assigned tasks correctly, which may have slowed down his production.  (*Id.*)  While all of his tasks were completed correctly with no errors, Plaintiff's pace was slightly slower than his co-workers.  (Tr. 373.)  Ms. Burgett also reported that Plaintiff provided good customer service and always demonstrated appropriate behavior and language.  (*Id.*)

---

[6]     The ALJ did not consider this report, as it was not available at the time of Plaintiff's administrative hearing.  On November 11, 2011, Plaintiff submitted the report to the Appeals Council.  (Tr. 367.)

On June 13, 2011, Ronna Woods, Vocational Rehabilitation Counselor with the Bureau of Vocational Rehabilitation ("BVR"), reported that Plaintiff has a physical or mental impairment which causes a substantial impediment to employment.  (Tr. 310.) Due to her determination that Plaintiff has a significant disability, Ms. Woods indicated that Plaintiff would be provided vocational services to include physical and mental restoration, job readiness training, transition services, job development and placement, and on-the-job supports.  (Tr. 311.)  According to Ms. Woods, Plaintiff required a minimum of six months of vocational services for him to obtain employment.  (*Id.*)

C.    **Hearing Testimony**

1.    **Plaintiff's Hearing Testimony**

At his hearing testimony on August 2, 2011, Plaintiff testified as follows:

The most significant problems keeping Plaintiff from working are his nervousness around other people, his anxiety about doing things correctly, and his slow work speed. (Tr. 46.)  Plaintiff has "a very bad problem with . . . anxiety" and "gets really stressed out real easily."  (Tr. 47.)  When he feels stressed, Plaintiff has panic attacks or begins to breathe heavily and experience heart attack-like symptoms.  (Tr. 49-50.)  His school psychologist, Mr. Muttillo, diagnosed him with Asperger's syndrome.  (Tr. 46.)

Plaintiff is a high school graduate.  (Tr. 40.)  As part of his schooling, he participated in a work-training program with the Brunswick branch of the Goodwill Industries for two or three hours per shift.  (Tr. 39, 46.)  Plaintiff had difficulty with the job whenever his routine job functions changed.  (Tr. 48.)  "Like later on they started putting sizes on the clothes because before it was just colorizing and if it's a men's shirt,

11

blue shirt, it'll go with the men's blue shirts.  But then they started putting like extra large and large, and I had a hard time with that.  When they changed that on me."  (Tr. 48-49.)  At the Medina County Career Center ("MCCC"), Plaintiff was enrolled in a visual media imaging class, where he designed pamphlets and other projects for clients. (Tr. 49.)  He is not sure whether he wants to go to college.  (*Id.*)

Plaintiff does not have a drivers license, because he is too nervous about driving and getting into an accident.  (Tr. 44-45, 51.)  He does not go shopping alone, because he is "not good with money" and is too shy.  (Tr. 43, 50-51.)  Plaintiff collects old antique telephones and clocks and enjoys music from the 1960s, '70s, and '80s.  (Tr. 40-41.) He has no problems dressing himself, does household chores, does laundry sometimes, and rarely cooks.  (Tr. 41.)  Plaintiff testified that he does not have many friends but that the ones he does have he visits about once or twice per month.  (Tr. 42.)  He talks on the phone to his friends about three or four times per month.  (*Id.*)  He does not currently participate in any clubs or organizations.  (Tr. 42-43.)  Plaintiff spends about two or three hours on the computer each day and sometimes mows the lawn or shovels snow.  (Tr. 44.)

### 2.    Plaintiff's Mother's Hearing Testimony

Ms. Karen Stetz, Plaintiff's mother, testified at Plaintiff's hearing as follows:

Plaintiff is "very shy" and "a little bit slower" than the majority of his peers.  (Tr. 53.)  He interacts very well with older adults but not with people his own age.  (Tr. 54.) He often becomes fixated on certain objects–like old clocks or telephones–and thoroughly researches them.  (Tr. 54-55.)  Plaintiff has a lot of anxiety and becomes

nervous in unfamiliar situations. (Tr. 57.)  He experiences stress and anxiousness whenever he has to do something he has never done before, but is fine after he learns what is expected of him.  (*Id.*)

### 3.    Vocational Expert's Hearing Testimony

The ALJ asked the VE to assume an individual of Plaintiff's age with a  high school education, except math calculation and math reasoning commensurate with a marginal education, and no past relevant work.  (Tr. 59.)  In the first hypothetical, the individual would be capable of simple and moderately complex, routine work at a reasonable pace, in a setting with regular expectations, occasional intermittent interactions with others, and would require some assistance at times of change in routine.  (Tr. 60.)  The VE opined that for the hypothetical individual described by the ALJ, there would be no jobs available in a competitive setting due to the need for assistance at times of change. (*Id.*)

The ALJ posed a second hypothetical limiting the same individual to restrictions stated by Mr. Muttillo on July 23, 2011, *i.e.*, poor or no useful ability in performing in a competitive setting, responding appropriately to changes in routine setting, relating to co-workers, functioning independently without special supervision, dealing with work stresses, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, relating predictably in social situations, managing funds and schedules, and leaving home on his own.  (Tr. 60-61, 521-522.)  The VE opined that there would be no unskilled jobs available that the

individual could perform. (Tr. 61.)

A third hypothetical asked the VE to assume the same vocational profile as described previously but also assume that the individual is restricted on an exertional basis to medium work and has the mental limitations stated by Ms. Burgett in April 2011.  (Tr. 61-63, 280-282.)  The VE opined that the individual could perform simple, unskilled jobs such as a laundry worker, a wire worker, or an electronics worker. (Tr. 64.)

The ALJ posed a final hypothetical that restricted the individual to medium work and simple, routine, repetitive tasks involving only simple work-related decisions and relatively few workplace changes, occasional interaction with supervisors, occasional and superficial interaction with co-workers and the general public, no situations requiring substantial negotiation, persuasion, or conflict resolution, and no work involving high quotas, strict time limits, or fast-paced production demands.  (Tr. 64-65.)  The VE testified that the individual could perform some unskilled jobs such a laundry worker, a wire worker, or an electronics worker.  (Tr. 65.)

Plaintiff's representative posed one hypothetical to the VE that included the limitations identified by Mr. Muttillo in April 2011.  (Tr. 66-67, 489-491.)  The VE opined that the individual could not perform work in a competitive setting.  (Tr. 67.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

15

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since June 29, 2009, the application date.

2.  The claimant has the following severe impairments: (1) bilateral metatarsus adductus with pes planus bilaterally, (2) obesity, (3) generalized anxiety disorder with history of panic attacks, (4) Asperger's syndrome with history of previous diagnosis of attention deficit hyperactivity disorder, and (5) specific learning disability in math calculation and math reasoning.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with additional non-exertional restrictions.  The claimant is limited to simple, routine, repetitive tasks involving only simple workplace decisions and in general, relatively few workplace changes.  He is limited to occasional interaction with supervisors.  He is limited to occasional and superficial interaction with coworkers and the general public.  He cannot interact in situations requiring substantial negotiation, persuasion, or conflict resolution.  He cannot work in an environment with high quotas, strict time limits or deadlines, or fast-paced production demands (such as those encountered in piecework or on a fast moving assembly line).

5.  The claimant has no past relevant work.

6.  The claimant was born on December 21, 1990 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

. . . . .

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2009, the date the application was filed.

16

# V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

Plaintiff argues that the ALJ's determination of his residual functional capacity

17

("RFC") to perform some work activity is not supported by substantial evidence in the record, because the ALJ erred in his evaluation of opinion evidence.  Additionally, Plaintiff argues that remand is appropriate for consideration of new and material evidence.  The Commissioner argues that substantial evidence supports the ALJ's weighing of the opinion evidence and that Plaintiff has not presented new and material evidence nor shown good cause for remanding the case.  Neither of Plaintiff's arguments are well taken.

### 1.  Evaluation of Opinion Evidence

Plaintiff argues that the ALJ erred by not giving significant weight to the opinion of Mr. Muttillo, Plaintiff's school psychologist, while at the same time improperly giving significant weight to the opinion of Ms. Burgett, Plaintiff's vocational case manager at Goodwill.  Specifically, Plaintiff argues that the ALJ erred by not addressing Mr. Muttillo's opinion in conformity with the "treating physician rule" and by finding Mr. Muttillo's opinion to be inconsistent with reports of Plaintiff's relatively normal behavior towards the end of high school and reports of his actual job performance at Goodwill. According to Plaintiff, Mr. Muttillo's findings are crucial to whether Plaintiff can actually perform sustained genuine work and are entirely consistent with Plaintiff's unsuccessful job performance at Goodwill.

### A.  Opinion of Mr. Muttillo

Plaintiff's argument that the ALJ improperly evaluated opinion evidence under the treating physician rule rests on the assumption that Mr. Muttillo was one of Plaintiff's

treating physicians, or a "treating source."[7]  The Commissioner's Brief suggests, but

fails to outrightly state, that Mr. Muttillo is not a treating source.[8]  Furthermore, the ALJ

has placed nothing on the record indicating that he considered Mr. Muttillo a treating

source.  "Classifying a medical source requires us to interpret the definitions in [20

C.F.R.] § 404.1502, a question of law we review *de novo*."  *Smith v. Comm'r of Soc.*

*Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  This Court must accord substantial deference

to any factual finding by the ALJ bearing on the question.  *Id.*  Here, however, the ALJ

---

[7]      Plaintiff's Brief on the Merits states that "the ALJ never identified Mr.
Muttillo as a treating source although the record indicates his treatment
relationship and the regulations acknowledge his status as an acceptable
medical source.  *See* 20 C.F.R. § 416.913(a)(2)."  (Pl. Br. at 14.)
However, Plaintiff does not offer any explanation to support his conclusory
statement that Mr. Muttillo is a treating source and therefore protected by
the treating physician rule.  Furthermore, Plaintiff has not assigned as
error the ALJ's failure to identify Mr. Muttillo as a treating source.  This
raises serious questions about whether Plaintiff has waived the argument.
This issue is fundamental to the entire analysis.  Counsel for both sides
are reminded to fully brief and address the relevant issues in the case.
Undeveloped arguments and suggestions that fail to meet the precise
issues in a case are not helpful to the Court.

[8]      The Commissioner notes that Plaintiff had five appointments with Mr.
Muttillo in May and June 2010.  (Defendant's Brief ("Df. Br.") at 11.)  She
then states that, generally, an ongoing treatment relationship does not
exist for purposes of the treating physician rule when the physician has
treated the plaintiff on only two or three occasions.  (*Id.*, *citing* Yamin v.
Comm'r of Soc. Sec., 67 F. App'x 883 (6th Cir. 2003); Boucher v. Apfel,
No. 99-1906, 2000 WL 1769520 (6th Cir. Nov. 15, 2000); Helm v. Comm'r
of Soc. Sec. Admin., 405 F. App'x 997 (6th Cir. 2011).)  The
Commissioner argues that while Mr. Muttillo "saw Plaintiff on several
occasions and performed diagnostic testing," Plaintiff overstated Mr.
Muttillo's April 2011 opinion in characterizing it as an opinion of disability.
(*Id.*)  At no point does the Commissioner directly address whether or not
Mr. Muttillo is a treating source.

19

did not make any findings on the record as to whether Mr. Muttillo is a treating source. Accordingly, we cannot defer to the ALJ's decision to determine this question.

A treating source is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.  Generally, an ongoing treatment relationship exists when the patient sees or has seen the treating source with a frequency consistent with accepted medical practice for the type of evaluation required for the medical condition at issue. *Id.* Here, Mr. Muttillo counseled Plaintiff on an out-patient basis through the Office of Strongsville Psychological Services. (Tr. 478.)  In 2010, he treated Plaintiff on five occasions and performed diagnostic testing.  (Tr. 333.)  Specifically, Plaintiff had appointments with Mr. Muttillo on 5/6/2010, 5/17/2010, 5/27/2010, 6/8/2010, and 6/29/2010.  (*Id.*)  Whether Mr. Muttillo is one of Plaintiff's treating sources by virtue of examining him on several occasions within a short period of time is a close question. Moreover, it is a question that the ALJ did not decide and that neither party adequately addressed.  Given that neither party has cited to significant evidence in the record for this Court to make a proper determination regarding Mr. Muttillo's relationship with Plaintiff, we will assume, but not decide, for purposes of the following analysis that Mr. Muttillo is one of Plaintiff's treating sources.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20

20

C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

Here, the ALJ did not wholly disregard Mr. Muttillo's opinion.  Rather, he decided not to give Mr. Muttillo's opinion significant weight and provided adequate reasons for this decision.  (Tr. 27.)  While the ALJ accepted Mr. Muttillo's diagnosis of Asperger's syndrome, he did not agree that the abnormalities Mr. Muttillo reported prevent the Plaintiff from functioning in the workplace within the RFC found by the ALJ.  (Tr. 26.)  After considering all the evidence, the ALJ properly determined that Mr. Muttillo's opinion was unsupported by sufficient clinical findings and inconsistent with the rest of the evidence.  (Tr. 23.)  Specifically, the ALJ found that Mr. Muttillo's opinion was inconsistent with reports of Plaintiff's relatively normal behavior towards the end of high

21

school and with the reports of Plaintiff's actual job performance at Goodwill.  (Tr. 27.)

Not only did the ALJ acknowledge Mr. Muttillo's diagnosis in making his decision, he also considered such evidence as Plaintiff's individualized education plan, his 93 IQ, his overall academic success in high school and in his work-study program, his performance on the Woodcock Johnson III test, and reports from medical, psychological, and school records, including monthly reports from Plaintiff's participation in the work experience program with Goodwill.  (Tr. 24-25.)  For example, the ALJ considered the opinion of Dr. Pallotta, a psychiatrist who treated Plaintiff on at least two occasions.  (Tr. 25, 383-384.)  Dr. Pallotta noted that the Plaintiff made good eye contact and was cooperative and pleasant, and that his developmental history was essentially unremarkable without milestone delays.  (Tr. 25.)  Furthermore, the ALJ acknowledged that while the record reflects that Plaintiff experienced and continues to experience both physical and mental limitations affecting his ability to work, these restrictions are at most moderate in nature and do not warrant a more restrictive functional capacity than the one the ALJ described.  (Tr. 28.)  It is true that the ALJ did not find that Plaintiff's mental limitations were as severe as Mr. Mutillo reported.  Nonetheless, in light of all the evidence as a whole, the ALJ acknowledged that Plaintiff did in fact suffer from some functional limitations.  (Tr. 24-28.)

Although the ALJ did not explicitly acknowledge that Mr. Muttillo was one of Plaintiff's treating sources, he offered good reasons to support his decision to assign less than controlling weight to Mr. Muttillo's opinion.  He noted that the opinion was inconsistent with the rest of the record, considering a number of different sources in coming to this determination.  (*Id.*)  Plaintiff does not explain how the ALJ's decision

22

deprives him of the ability to understand the ALJ's reasons for finding the opinion of a treating source to be less than controlling.  Because the ALJ's reasons "permit[] . . . a clear understanding of the reasons for the weight given" to Mr. Muttillo's opinion, *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), the ALJ's decision satisfies the purposes of the treating physician rule and, thus, provides no basis for remand in this case.

### B.  Opinion of Ms. Burgett

Social Security Ruling 06-03P guides the analysis of whether an opinion of a non-medical source may be entitled to greater weight than the opinion of a treating source.  When evaluating the opinions of "other sources," including non-medical sources who have observed the claimant in a professional capacity, an ALJ must explain the weight given to the opinion of the source or ensure that the discussion of the evidence allows a subsequent reviewer to follow the ALJ's reasoning if the opinion may have an effect on the outcome of the case.[9]  S.S.R. 06-03P, 2006 WL 2329939 (S.S.A.).  While information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."[10]  *Id.*

---

[9]  "Other sources" also include medical sources who are not "acceptable medical sources" and "non-medical sources" including, but not limited to, education personnel, public and private social welfare agency personnel, rehabilitation counselors, and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.

[10]  The weight to which evidence from "other sources" may be given will vary based on the particular facts of each case.  S.S.R. 06-03P, 2006 WL 2329939 (S.S.A.).  The ALJ should consider such factors as the nature and extent of the relationship, whether the evidence is consistent with

SSR 06-03P further states:

> An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.

*Id.*

Here, Plaintiff argues that the ALJ did not give significant weight to Mr. Muttillo, while at the same time improperly giving significant weight to the opinion of Ms. Burgett, Plaintiff's vocational case manager at Goodwill.  According to the ALJ, one of the reasons he did not give significant weight to Mr. Muttillo's opinion was because "it is not consistent with the reports of the claimant's actual job performance at Goodwill."  (Tr. 27.)  The ALJ found Ms. Burgett's statements to be "more persuasive" than Mr. Muttillo's opinion, because "she personally observed the claimant in a work environment that was a part of the claimant's educational experience."  (*Id.*)  The ALJ explained why he gave significant weight to Ms. Burgett's assessment, noting that she "was in the best position to assess the claimant's ability to work because she in fact supervised and worked with the claimant at Goodwill.  Thus, while Ms. Burgett is not a medical source, I still give her assessment significant weight."  (Tr. 26.)

As Plaintiff's vocational case manager, Ms. Burgett is considered a non-medical source who has observed Plaintiff in his professional capacity.  Under SSR 06-03P, it

---

other evidence, and any other factors that tend to support or refute the evidence.  *Id.*

was not improper for the ALJ to assign greater weight to Ms. Burgett's opinion over Mr. Muttillo's opinion even though Mr. Muttillo is a treating source, because Ms. Burgett observed Plaintiff's behavior on more occasions, she had greater knowledge of Plaintiff's functioning over time, and her opinions were more consistent with the record as a whole. *See* S.S.R. 06-03P, 2006 WL 2329939 (S.S.A.).  As the Commissioner discusses in her Brief on the Merits, unlike Mr. Muttillo, who made predictions about Plaintiff's ability to function in the workplace, Ms. Burgett actually observed Plaintiff in a work-like setting and submitted monthly reports detailing Plaintiff's progress; her reports suggested that Plaintiff's limitations were less severe than Mr. Muttillo reported.  Given that Ms. Burgett actually watched Plaintiff perform in a job-like setting for nearly two years and consistently made detailed reports based on what she observed, it was not improper for the ALJ to find Ms. Burgett's opinion to be more persuasive than the opinion of Mr. Muttillo, who met with Plaintiff on only five occasions and did not observe him in the workplace.  Accordingly, Plaintiff's argument that the ALJ improperly evaluated opinion evidence in the record is not well taken, and remand is not appropriate.

### 2. Remand to Consider New and Material Evidence

Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . . for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate.  *See,*

25

*e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.

Here, Plaintiff argues that his case must be remanded for consideration of evidence from Ms. Burgett summarizing Plaintiff's involvement in the work experience program with Goodwill.  (Tr. 367-375.)  Plaintiff contends that the proffered evidence was not available at the time of his administrative hearing, because it was completed in close proximity to the hearing date.  However, the report includes the date "6/23/2011" at the top of each page, and Ms. Burgett as well as her supervisor purport to have signed and dated the report on 6/24/2011.  (Tr. 371-375.)  Plaintiff's hearing did not take place until August 2, 2011, and the ALJ did not render his decision until September 1, 2011.  (Tr. 18.)  Plaintiff offers no explanation for his delay in submitting evidence that was available six weeks before his hearing.  As a result, Plaintiff has not shown good cause for the belated submission of Ms. Burgett's final report, and remand is not appropriate.

Plaintiff also argues there is a reasonable probability that the ALJ would have found Plaintiff disabled had he considered the following "new" information:  Ms. Burgett's summary of Plaintiff's performance at Goodwill includes comments that Plaintiff was often observed as being off task, had low production due to repeatedly seeking assurance that he was performing his tasks correctly, and was "below competitive" in

26

putting out inventory and pulling, sorting, and hanging textiles.  (Tr. 372-373.)  In her

final report, Ms. Burgett concluded that Plaintiff should follow through with a BVR referral

to help further determine his strengths and barriers to employment and that he would

require job coaching to help with self confidence and task instruction.  (Tr. 374.)

Plaintiff's argument is not well taken, because the information in Ms. Burgett's

final report is not new or material.[11]  Plaintiff has failed to persuade this Court that there

is a reasonable probability that the ALJ would have found Plaintiff disabled had he

considered Ms. Burgett's final summary of Plaintiff's experience at Goodwill.  While Ms.

Burgett reported that Plaintiff was often off task and demonstrated difficulty with putting

out inventory and pulling, sorting, and hanging textiles, her final summary also noted that

Plaintiff "fully achieved" his goals, including increasing his production, and demonstrated

appropriate behaviors for the workplace throughout the program.  (Tr. 372-374.)  In

addition, the report shows adequate socialization skills, noting the following:

> Mr. Stetz demonstrated appropriate behaviors for the work place
> throughout this program.  He greeted his peers and co-workers and
> would often share historical or celebrity facts.  Mr. Stetz appeared
> informed about current local, state, country and world events and
> would converse on those topics.  He would also converse with
> customers that initiated conversation.  At times, Mr. Stetz was
> observed off task talking with co-workers about aforementioned
> topics.

(Tr. 372.)  Thus, the report contains both negative *and* positive reflections on Plaintiff's

---

[11]    Notably, Plaintiff's first assignment of error addresses why it was improper
for the ALJ to find Ms. Burgett's opinion persuasive, while his second
assignment urges this Court to remand his case so that Ms. Burgett's final
report can be considered.  Thus, Plaintiff's argument for remand to
consider Ms. Burgett's "new" evidence is inconsistent with his first
argument alleging that it was improper for the ALJ to give significant
weight to Ms. Burgett's opinion.

ability to function in the workplace.  In his Brief, Plaintiff concludes, but does not explain, how there is a reasonable probability that Plaintiff would have been found disabled had the ALJ considered Ms. Burgett's final report.  In making this blanket conclusion, Plaintiff does not address the fact that the final report also includes evidence upon which the ALJ could have relied to further support his finding that Plaintiff is not disabled.

Moreover, Plaintiff ignores the fact that other reports submitted by Ms. Burgett and properly considered by the ALJ indicate substantially similar findings as Ms. Burgett's final report.  For example, Ms. Burgett reported on April 1, 2011, that Plaintiff has a very slow and inconsistent work speed.  (Tr. 307.)  Plaintiff fails to demonstrate that Ms. Burgett's final report from June 2011, created less than three months after her April report, would contain the type of material evidence requiring remand of this case.

Additionally, Plaintiff fails to consider other evidence upon which the ALJ relied in determining Plaintiff's RFC.  The ALJ found Plaintiff "capable of sustained employment, performing simple tasks free of high-paced production demands, despite his limitations in math calculation and despite his shortcomings in social functioning." (Tr. 26-27.)  He also gave some weight to the opinion of Dr. Steven J. Meyer, Ph.D., who stated that Plaintiff is capable of simple and moderately complex routine work, at a reasonable pace, in a setting with regular expectations, and occasional to intermittent interactions with others, even though some assistance may be needed at times of change in routine. (Tr. 27.)  This evidence on which the ALJ relied to find Plaintiff's RFC coincides with the findings in Ms. Burgett's final report.  The ALJ acknowledged that Plaintiff had a slightly slower pace than his co-workers, that he has some functional restrictions related to his ability to handle stress, that he has shortcomings in social functioning, and that he

28

evidenced struggles during his educational program at Goodwill. (Tr. 26-27.) Nonetheless, the ALJ found Plaintiff capable of performing simple tasks free of high-paced production demands.[12] (*Id.*) Thus, Ms. Burgett's final report does not add any significant or material additional evidence. Accordingly, Plaintiff cannot sustain his burden of demonstrating that the proffered evidence is material. Because Plaintiff has not shown that the evidence is material and that there is good cause for his delay in introducing it, remand is inappropriate.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: August 26, 2013

---

[12]    The VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform jobs such as a laundry worker, a wireworker, and an electronics worker. (Tr. 64.) The ALJ determined that the VE's testimony was consistent with the Dictionary of Occupational Titles and relied upon the testimony to conclude that the Plaintiff is capable of performing work that exists in significant numbers in the national economy. (Tr. 29.)